IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00030-FL

**Pamela Gail Best,**

    Plaintiff,

v.

**Nancy Berryhill**, Acting Commissioner of Social Security,[1]

    Defendant.

**Memorandum & Recommendation**

  Plaintiff Pamela Gail Best instituted this action on January 19, 2016, to challenge the denial of her application for social security income. Best claims that the Administrative Law Judge ("ALJ") William Andersen erred in failing to consider whether utilizing a lower "Grid Rule" in the Medical–Vocational Guidelines was appropriate. Both Best and Defendant Nancy Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 22, 26.

  After reviewing the parties' arguments, the court has determined that ALJ Andersen reached the appropriate decision. There is substantial evidence to support ALJ Andersen's step five finding relying on the testimony of a Vocational Expert ("VE") as to the existence of other work which Best could perform. Therefore, the undersigned magistrate judge recommends that the court deny Best's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.  Background**

On January 12, 2012, Best protectively filed applications for disability benefits and supplemental security income. In both applications, Best alleged a disability that began on June 25, 2011. After her claims were was denied at the initial level and upon reconsideration, Best appeared at a hearing before an ALJ Andersen on March 7, 2014 to determine whether she was entitled to benefits. ALJ Andersen determined determined Best was not entitled to benefits because she was not disabled. *Id.* at 12–20.

ALJ Andersen found that Best had the following severe impairments: diabetes mellitus, osteoarthritis, chronic bilateral thumb pain, chronic obstructive pulmonary disease ("COPD"), asthma, degenerative disc disease of the cervical spine, post-traumatic stress disorder ("PTSD"), depression, and anxiety. *Id.* at 15. ALJ Andersen found that Best's impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* Andersen then determined that Best had the residual functional capacity ("RFC") to perform light work with additional limitations. She can sit four hours in an eight-hour workday; she can stand and walk six hours in an eight-hour workday[3]; she is able to use her right hand frequently; she is unable to climb ladders, ropes, or scaffolds; she is limited to no more than occasional work around moving machinery parts or heights; she must avoid excessive exposure to temperature extremes; she is unable to work outside; she is capable of performing simple, routine, repetitive tasks with occasional interactions with supervisors and the public and frequent interactions with coworkers; and her work must involve non-production tasks. *Id.* at 16. ALJ Andersen concluded that Best had no past relevant

---

[3] In questioning the Vocational Expert ("VE"), ALJ Andersen set forth a hypothetical restricting sitting to four hours and standing and walking to six hours in an eight-hour day. Tr. at 43. He then responded affirmatively when the VE asked " [I]s sit-stand -- . . . with the four hours?" *Id*. at 45–46.  This testimony appears to cast doubt as to whether sitting and standing, or only the former, were restricted to four hours. However, ALJ Andersen's decision clearly limits Best to sitting for four hours and standing for six hours. *Id*. at 16.

2

work but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Best was capable of performing. *Id.* at 18–19. A routing clerk was one such job. *Id.* at 19. Thus, ALJ Andersen found that Best was not disabled. *Id.* at 20.

After unsuccessfully seeking review by the Appeals Council, Best commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on January 19, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the

claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

Because the parties do not dispute the medical evidence or ALJ Andersen's consideration of it, it will receive only a brief review. Best has several physical impairments which ALJ Andersen deemed to be severe: diabetes mellitus, osteoarthritis, chronic bilateral thumb pain, COPD, asthma, and degenerative disc disease of the cervical spine. Tr. at 15. She has also has diagnoses of PTSD, depression, and anxiety which impede her ability to perform work activities. *Id.* Best testified that she experiences back pain, numbness and tingling in her hands and feet, wheezing and dyspnea. *Id.* at 17. She stated that she has difficulty using her hands for buttons and zippers, has fallen, and uses a cane (although it is not prescribed by a physician). *Id.*

Best alleges that she has had a hard time controlling her diabetes. *Id.* Treatment notes reflect improvement in her COPD since she stopped smoking. *Id.* The medical record also demonstrates her complaints of symptoms which, upon examination, yielded generally minimal objective findings and usually resolved with conservative treatment. *Id.* at 17–18.

Best has received treatment for PTSD, anxiety, and depression which ALJ Andersen correlated to family stressors and a past history of abuse. *Id.* at 18. ALJ Andersen observed that exams found Best had intact insight, judgment, memory, mood, and affect. *Id.* He noted that a consultative examiner found Best had a fair prognosis with medication; that she could understand, retain, and follow instructions; and that she could sustain attention to perform simple, routine, repetitive tasks. *Id.* ALJ Andersen determined that Best had mild limitations in activities of daily living, moderate limitations in social functioning and maintaining concentration, persistence, or pace, and has experienced no episodes of decompensation of extended duration. *Id.* at 15.

### D. Step Five

Best argues that ALJ Andersen erred by failing to consider whether utilization of a lower Grid Rule was appropriate where the RFC determination fell between two Grid Rules directing different results. Specifically, she contends that her RFC fell between the exertional ranges for light and sedentary work and, under SSR 83–12, ALJ Andersen should have considered whether the lower, sedentary level more appropriately addressed her abilities. Under the Grids, a sedentary RFC would direct a finding of "disabled" as of March 18, 2013, when Best reached the age of 50. The Commissioner asserts, and the court agrees, that ALJ Andersen properly determined the application of the Grid Rules.

While a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. *Pass*, 65 F.3d at 1203 (citing *Hunter* v. *Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines (Grids) or by calling a

5

vocational expert [("VE")] to testify." *Aistrop* v. *Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)).

The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2. An ALJ must first determine which Grid table applies depending on the claimant's exertional capacity. *Id.* Based on the claimant's age, education, and previous work experience, rules within the Grid table direct a finding of "disabled" or "not disabled." *Id.*

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform. *Grant* v. *Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker* v. *Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond* v. *Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook* v. *Chater*, 901 F. Supp. 971, 977 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). The Regulations permit testimony from a vocational expert to determine "whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used[.]" 20 C.F.R. §§ 404.1566(e), 416.966(e).

Where a claimant's RFC does not fit into one single Grid, a VE may be consulted to determine which Grid applies. *See* SSR 83–12, 1983 WL 31253. More specifically:

> Where the Grids would result in different conclusions and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory

6

criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

*Id.* at *3. However, where the claimant's limitations place them significantly below the Grid's determination, the lower rule may be adopted, and a finding of disabled is justified. SSR 83–12, 1983 WL 31253, at *2.

Here, ALJ Andersen found that Best had the RFC to perform light work with additional limitations. Tr. at 16. Based on Best's education and previous work experience, the Grid Rules for sedentary and light capacity direct opposite conclusions with regard to her disability as of her March 18, 2013, her 50th birthday. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.12 (sedentary work, disabled) and 202.13 (light work, not disabled).

However, Best fails to establish a significant reduction in her exertional capacity. Because her actual limitations enable her to perform some light work, Best's RFC is properly characterized as less than a full range of light work. Her RFC is consistent with exertional requirements of light work with the exception that Best is limited to sitting for four hours. ALJ Andersen's finding as to Best can stand or walk for six hours in an eight-hour day is consistent with light work. SSR 83–10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday."). The other limitations set forth in Best's RFC include manipulative, postural, environmental, and mental limitations. *See* SSR 83–10, 1983 WL 31251, at *6 (Jan. 1, 1983) (nonexertional impairments do not affect the ability to sit, stand, walk, lift, carry, push, or pull); SSA Program Operations Manual System ("POMS") § DI 24515.063 (exertional limitations affect ability to meet strength demands of a job such as sitting, standing, walking, lifting, carrying, pushing, and pulling).

The VE identified only one position—routing clerk—as other work Best could perform given her RFC for a reduced range of light work. Tr. at 19, 45. Best's counsel questioned the VE whether a sit-stand option[4] and manipulative restrictions would significantly erode the light job base. *Id.* at 46. The VE stated they would, but later clarified that only the sit-stand option, not manipulative restrictions, would reduce the numbers of routing clerk jobs available. *Id.* at 46–47. The VE testified that the restrictions for sitting and standing reduced the number of such positions available to 60,000 nationally and 1,200 in North Carolina. *Id.* at 45. This is sufficient to satisfy the Commissioner's step five burden. *See Hicks* v. *Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (holding that 110 jobs in the claimant's state was a significant number); *see also Guiton* v. *Colvin*, 546 F. App'x. 137, 142 (4th Cir. 2013) (recognizing *Hicks* found 110 jobs in claimant's state to be significant number of jobs); *Hodges* v. *Apfel*, 203 F.3d 820, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (unpublished table decision) (finding 153 jobs in region was significant number); *Hyatt* v. *Apfel*, 153 F.3d 720, 1998 WL 480722, at *3 (4th Cir. Aug. 6, 1998) (unpublished table decision) ("We previously have found that as few as 110 jobs constitute a significant number."); *Craigie* v. *Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (finding that 200 jobs in region was a significant number of jobs); *Kennerly* v. *Colvin*, No. 2:15-cv-1540, 2015 WL 9672913, at *13 (S.D.W. Va. Dec. 8, 2015) ("[I]dentification of even one occupation appropriate for Claimant fulfills the Commissioner's burden at the fifth step of the process, so long as the occupation is available in significant numbers in the economy."), *adopted by,* 2016 WL 93867 (S.D.W. Va. Jan. 7, 2016); *Hensley* v. *Colvin*, No. 5:13-CV-27810, 2015 WL 566626, at *19 (S.D.W. Va. Feb. 10, 2015) ("The Fourth Circuit has recognized that 110 jobs in a given region

---

[4] A limitation that prevents a claimant from either sitting or standing for long periods, but permits a claimant to sit or stand, in total, long enough to endure an eight-hour work day, is known as a "sit-stand" limitation. *Golini v. Astrue*, 483 F. App'x. 806, 807 (4th Cir. 2012), *see also* SSR 83-12, 1983 WL 31253, at *4 (discussing alternate sitting and standing).

may constitute a significant number of jobs as required by the regulations."); *Rodriguez* v. *Astrue*, No. 11 Civ. 6977, 2013 WL 3753411, at *3 (S.D.N.Y. July 17, 2013) ("The term significant number is not statutorily defined and courts have generally found that what constitutes a significant number is fairly minimal.") (quoting *Fox* v. *Comm'r of Soc. Sec.*, No. 02 Civ. 1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)).

In sum, Best has failed to establish a significant reduction in her exertional capacity for light work and, given her additional limitations, ALJ Andersen properly sought the assistance of a VE at step five. The VE testified that there was other work Best was capable of performing, given her age, education, work experience, and RFC and that a significant number of such jobs existed. Best has not shown that ALJ Andersen failed to comply with the requirements of SSR 83–12. Therefore, her argument should be rejected.

## III. Conclusion

For the forgoing reasons, the undersigned recommends that the court deny Best's Motion for Judgment on the Pleadings (D.E. 22), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 26), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

9

636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen* v. *Collins***, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: February 3, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge